Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3118 | **DATE** | 10/26/2004 |
| **CASE TITLE** | Griffith vs. Wood Brothers | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Status hearing held. For the reasons stated in the attached memorandum opinion, defendants' motions to dismiss are granted and defendants' motions to transfer are denied as moot. All pending dates and motions are hereby stricken as moot. Terminating case. Entered Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 27 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. Memorandum Opinion distributed in open Court. | | docketing deputy initials | 19 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| MW | courtroom deputy's initials | 2004 OCT 27 AM 6:04 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WESTON GRIFFITH, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 04 C 3118 |
| | ) |
| WOOD BROTHERS, a Missouri partnership, and ROUSH CORPORATION d/b/a ROUSH RACING, a Michigan corporation, | ) |
| | ) DOCKETED |
| Defendants. | ) OCT 2 7 2004 |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants Roush Corporation's ("Roush") motion to dismiss or transfer and on Glen Wood Company's ("Wood") motion to dismiss or transfer. For the reasons stated below, we grant both motions to dismiss and deny the motions to transfer as moot.

## BACKGROUND

Plaintiff Weston Griffith, Jr. ("Griffith"), a citizen of Illinois, is the sole owner

1

19

and President of Solid Steel Company, Inc. ("Solid Steel"). Roush, a Michigan corporation with its principal place of business in North Carolina, develops automotive parts and races cars competitively. Wood, a Virginia corporation with its principal place of business in North Carolina, owns and manages automobiles driven on the NASCAR circuit.

Griffith developed a part ("Part X") for use in automobiles, which allegedly increases the speed at which a race car can travel around a racetrack. On September 23, 2003, Griffith traveled to Kansas City, Missouri to meet with Wood representatives for the purpose of discussing the possibility of leasing Part X. Wood tested Part X at the Kansas Speedway, and thereafter negotiated and entered into a contract with Griffith on September 29, 2003. All negotiations were conducted via telephone, and no Wood representative entered Illinois to negotiate or sign the contract. According to the contract, Wood was prohibited from testing, altering, or defacing Part X in any way.

After the contract was executed, Griffith sent four sets of Part X to Wood's office in Virginia. Wood then used Part X in races held in Kansas City, Missouri, Charlotte, North Carolina, Martinsville, Virginia, Atlanta, Georgia, and Phoenix, Arizona. On November 16, 2003, Part X allegedly was improperly shared by Wood and installed into a car that was driven on behalf of Roush at the Miami/Homestead

2

NASCAR race in Florida. Griffith contends that after the Miami/Homestead race, Part X was returned to him in an altered condition and is no longer able to be used in race cars.

On March 22, 2004, Griffith filed a six count complaint in Illinois state court against Defendants alleging a violation of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065 *et. seq.*, against Roush (Count I), a willful and malicious violation of the ITSA against Roush (Count II), a conversion claim against Roush (Count III), a violation of the ITSA against Wood (Count IV), a willful and malicious violation of the ITSA against Wood (Count V), and breach of contract claim against Wood (Count VI). On April 30, 2004, Defendants removed this action to federal court based on diversity jurisdiction. Roush and Wood have each filed motions to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In the alternative, Defendants moved to transfer venue pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Middle District of North Carolina.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides that an action should be dismissed against a party over whom the court lacks personal jurisdiction. Fed. R.

Civ. P. 12(b)(2). The plaintiff bears the burden of providing sufficient evidence to establish that personal jurisdiction exists. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). For on a motion to dismiss for lack of personal jurisdiction, "all well-pleaded jurisdictional allegations in the complaint are accepted as true unless controverted by affidavit." *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F.Supp.2d 1018, 1021 (N.D. Ill. 2004);*Zurich Capital Markets, Inc. v. Coglianese*, 2004 WL 2191596, at *3 (N.D. Ill. 2004) *Turner v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

## DISCUSSION

Defendants argue that they are not subject to personal jurisdiction in Illinois courts because they do not have sufficient contacts with Illinois. In a diversity action, the extent of the court's personal jurisdiction is governed by state law regarding personal jurisdiction. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992)). Illinois authorizes service of process both on in-state defendants and out-of-state defendants under its long arm statute which states in part the following:

> § 2-209. Act submitting to jurisdiction--Process. (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts

4

of this State as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State;

(3) The ownership, use, or possession of any real estate situated in this State;

(4) Contracting to insure any person, property or risk located within this State at the time of contracting;

(5) With respect to actions of dissolution of marriage, declaration of invalidity of marriage and legal separation, the maintenance in this State of a matrimonial domicile at the time this cause of action arose or the commission in this State of any act giving rise to the cause of action;

(6) With respect to actions brought under the Illinois Parentage Act of 1984, as now or hereafter amended, [FN1] the performance of an act of sexual intercourse within this State during the possible period of conception;

(7) The making or performance of any contract or promise substantially connected with this State;

(8) The performance of sexual intercourse within this State which is claimed to have resulted in the conception of a child who resides in this State;

(9) The failure to support a child, spouse or former spouse who has continued to reside in this State since the person either formerly resided with them in this State or directed them to reside in this State;

(10) The acquisition of ownership, possession or control of any asset or thing of value present within this State when ownership, possession or control was acquired;

(11) The breach of any fiduciary duty within this State;

(12) The performance of duties as a director or officer of a corporation organized under the laws of this State or having its principal place of business within this State;

(13) The ownership of an interest in any trust administered within this State; or

(14) The exercise of powers granted under the authority of this State as a fiduciary.

(b) A court may exercise jurisdiction in any action arising within or without this State against any person who:

(1) Is a natural person present within this State when served;

(2) Is a natural person domiciled or resident within this State when the cause of action arose, the action was commenced, or process was served;

(3) Is a corporation organized under the laws of this State; or

(4) Is a natural person or corporation doing business within this State.

(c) A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.

735 ILCS 5/2-209. Thus, in addition to the specific authorized instances of personal jurisdiction, Illinois law allows the exercise of personal jurisdiction over non-resident defendants if doing so comports with the due process provisions of the Illinois and federal constitutions. *RAR*, 107 F.3d at 1276.

## A. Illinois Long-Arm Statute

Griffith argues that Defendants were "doing business" in accordance with the Illinois long-arm statute providing personal jurisdiction over a person "doing business within this State." 735 ILCS 5/2-209(b)(4). A party is considered "doing business" in Illinois if "it operates within the state, 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Michael J. Neuman & Associates, Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir. 1994)(quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 115 N.E. 915, 917 (1917)).

In the instant action Griffith argues that Defendants competed at annual races in Illinois, that NASCAR televised races in Illinois which included Defendants, that NASCAR sold apparel featuring Defendants' drivers in Illinois, and, that Defendants' drivers earned monetary awards from races in Illinois. (Ans. 2-5). However, NASCAR is not a party to this litigation, and therefore Griffith's assertions about NASCAR's presence in Illinois are not pertinent. Additionally, the annual races entered by Defendants, regardless of the monetary benefit earned, does not lead to the conclusions that Defendants were "doing business" at any time in Illinois. *See Dal Ponte v. N. Manitoba Native Lodges,* 581 N.E.2d 329, 332 (Ill. App. Ct. 1991)(finding attendance at annual trade shows was insufficient to constitute doing business in Illinois). Defendants' participation at races in Illinois marked only a few of the numerous races entered each year, and each Defendant received only a fraction of their annual revenues from Illinois races. (Roush Reply 4). *See Riemer v. KSL Recreation Corp.*, 807 N.E.2d 1004, 1013 (remarking that "even substantial earnings from [Illinois] have not been considered indicative of whether a corporation has established a permanent and continuing relationship with the forum"). There is no indication that Roush or Wood attempted to conduct sales in Illinois or maintained offices in Illinois or engaged in the type of permanent and continuous activity that would be considered "doing business" in Illinois. *See id.*

(stating that considerations for the "doing business" analysis include whether the "defendant has maintained offices or engaged in sales activities in Illinois.").

In regards to Griffith's alleged economic injury, without any other Illinois connection, is insufficient to sustain personal jurisdiction over Roush and Wood. Although the general rule is that a "tort occurs where its harm is felt[,]... an Illinois court does not acquire jurisdiction simply because the 'last act' of the tort is an economic loss felt in Illinois when all the conduct contributing to the injury occurred outside of Illinois... [and] [a]n economic injury, by itself, does not support the conclusion that a tortious act was committed in Illinois." *Lifeway Foods, Inc. v. Fresh Made, Inc.*, 940 F.Supp. 1316, 1319-20 (N.D. Ill. 1996); *See also Janmark v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997)(noting the economic injury in the forum was accompanied by the defendant's interference with the plaintiff's Illinois customer); *Indianapolis Colts v. Metro. Balt. Football Club Ltd. P'ship* 34 F.3d 410, 412 (7th Cir. 1994) (requiring more than simply bringing about the injury in the forum state); *Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985)(rejecting that premise that "any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff"). Griffith has failed to demonstrate how either Roush or Wood committed a tort in Illinois.

B. Illinois Constitution

The Supreme Court of Illinois has differentiated between the Illinois and federal constitutions. *See RAR*, 107 F.3d at 1276 (noting that the Supreme Court of Illinois "has made clear that the Illinois due process guarantee is not necessarily co-extensive with federal due process protections"). However, the Illinois courts have given little guidance in how the two constitutions differ. *Id.* The Supreme Court of Illinois has simply stated that "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Id.* (quoting *Rollins v. Ellwood*, 565 N.E.2d. 1302, 1316 (Ill. 1990)). As a result, the Seventh Circuit has concluded that there is "no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l Corp.*, 302 F.3d at 715 (citing *RAR*, 107 F.3d at 1276). Accordingly, the court will proceed with an analysis of federal constitutional limits on jurisdiction. *See RAR*, 107 F.3d at 1277 (choosing to "move on to address the federal constitutional issues directly")

C. United States Constitution and Federal Due Process

9

Federal due process requirements determine when a court "may exercise personal jurisdiction over nonresident defendants." *Jennings v. AC Hydraulic A/S,* 383 F.3d 546, 549 (7th Cir. 2004)(explaining that the due process law is intended to "allow[] potential defendants to structure their contacts with different forums so as to plan where their business activities will and will not render them liable to suit.). A court may only exercise personal jurisdiction over a defendant if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir. 1997)(quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). The two types of personal jurisdiction are specific jurisdiction and general jurisdiction. *Jennings,* 383 F.3d at 549.

1. Specific Jurisdiction

Specific jurisdiction is personal jurisdiction over a defendant in an action "arising out of or related to the defendant's contacts with the forum." *RAR, Inc.,* 107 F.3d at 1277 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984). For the personal jurisdiction analysis a court must "focus on whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court with respect to this litigation." *Purdue Research Found. v. Sanofi-*

*Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003)(citing *World-Wide Volkswagen*, 444 U.S. at 292 and *International Shoe*, 326 U.S. at 316-17). The court must consider "foreseeability" by the defendant meaning whether or not "the defendant could have anticipated being haled into the courts of the state with respect to the matter at issue." *Purdue Research Found.*, 338 F.3d at 780. In assessing such forseeability it is the defendant's conduct that is pertinent because "it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Id.* It must be established that the "defendant purposefully availed itself of the privilege of conducting activities within the forum state." *Id.*

In regards to contractual disputes merely "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum." *Id.* Instead, the court must examine the "contract in the context of the entire transaction of which it is a part" and consider "prior negotiations, contemplated future consequences, the terms of the contract and the parties' course of actual dealing with each other." *Id.* Personal jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Burger King v. Rudewicz*, 471 U.S. 462, 475 (1985)(emphasis in original)(quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). If a court determines that the defendant has sufficient contacts with the forum state, "those contacts may be evaluated in light of

other factors to determine, in the final analysis, whether the exercise of jurisdiction would be compatible with 'fair play and substantial justice.'" *Purdue Research Found.*, 338 F.3d at 781. In determining whether or not the exercise of personal jurisdiction comports with the notions of "fair play and substantial justice" and the court should consider: 1) "the burden on the defendant," 2) "the forum State's interest in adjudicating the dispute," 3) "the plaintiff's interest in obtaining convenient and effective relief," 4) "the intestate judicial system's interest in obtaining the most efficient resolution of [the underling dispute]," and 5) "the shared interest of the several States in furthering fundamental substantive social policies." *Purdue Research Found.*, 338 F.3d at 780(quoting *Burger King*, 471 U.S. at 477).

In the instant action all of the claims alleged by Griffith resulted from the contractual relationship developed between Griffith and Wood. *See Burger King*, 471 U.S. at 465 (remarking that the litigation arose from the cancellation of a franchise contract, and contained claims of trademark infringement and breach of contract). Courts have noted that in contractual disputes, it is important to recognize that "although territorial presence may indeed be an important factor in many cases, it is by no means essential." *Purdue Research Found.*, 338 F.3d at 781. Nevertheless, a non-resident defendant, like Roush or Wood, does not subject itself to personal jurisdiction merely by entering into a contract with an Illinois resident. *RAR*, 107 F.3d at 1277 (noting that "an out-of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts").

In the instant action Griffith does not dispute Wood's contention that Griffith initiated the discussions which led to the contractual relationship. (Wood Mem. 1, 7)(G. Ans. 1). In doing so, Griffith actually left the state of Illinois and traveled to Kansas City, Missouri to meet with Wood representatives. (G. Ans. 1). There is no indication that either Roush or Wood initiated any contact with Griffith. Second, the contract between Griffith and Wood was not negotiated in Illinois. Although Griffith was located in Illinois during telephone discussions with Wood, the issue at hand is whether it is proper for the court to exercise jurisdiction over defendants. *See Dehmlow*, 963 F.2d at 946 (recognizing that "[t]he defendant's conduct in relation to the forum state, not unilateral actions of the plaintiff, determine[s] jurisdiction"). Wood negotiated the contract primarily from its office in Virginia. (Wood Mem. 1). Moreover, Wood never sent a representative to Illinois to meet with Griffith. (Wood Mem. 7). Thus, Griffith's allegation that Wood's negotiations show sufficient contacts with Illinois is incorrect. *See Heller Fin., Inc v. Ohio Sav. Bank*, 158 F.Supp.2d 825, 829 (N.D. Ill. 2001)(concluding that, "[e]ven exaggerated, [the defendant's] telephone calls and faxes do not constitute minimum contacts with Illinois"); *Ameritech Servs., Inc. v. SCA Promotions, Inc.*, 2000 WL 283098, at * 2 (N.D. Ill. 2000)(finding "[a]ll of [the defendant's] communications with Illinois followed from [the plaintiff's] initial inquiry" and the defendant's communications from outside of Illinois did not amount to minimum contacts with Illinois).

In addition, the contract at issue in the instant action was finalized in Virginia rather than in Illinois. Wood did not send a representative to Illinois to sign the contract. (Wood Mem. 7). Rather, a Wood representative signed the contract after it was mailed from Illinois to Wood's office in Virginia. (Wood Mem. 7). Since Wood's signature was the last to chronologically appear on the contract, the valid contract was actually formed in Virginia. *See Heller Fin.*, 158 F.Supp.2d at 829 (noting that the last signature added to a contract creates the contract). Also, there is no evidence that performance of the contract ever occurred in Illinois. Wood confirms that Part X was used at races in Missouri, North Carolina, Virginia, Georgia, and Arizona. (Wood Mem. 4). Griffith alleges that Wood shared Part X with Roush at a race in Florida. (G. Ans. 2). There is no indication that Defendants ever used Part X in Illinois.

Finally, considering the contract-specific factors, there is no indication that Defendants ever maintained an office, bank account, mailing address, phone number, or employees in Illinois, and have not had any other Illinois-based connection. *See World-Wide Volkswagen*, 444 U.S. at 295 (noting the lack of solicitation, advertising, sales, services, customers, or any other Oklahoma-based connection as contributing reasons for not exercising personal jurisdiction). There is no indication that Defendants ever solicited or established any business ventures in Illinois. *See Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)(finding jurisdiction only over parties who "reach out beyond one state and create continuing

relationships and obligations with citizens of another state"). Defendants never directly or indirectly sought the protections and benefits of Illinois laws because they did not conduct activities within Illinois. *See Klump*, 71 F.3d at 1372 (concluding that jurisdiction could be exercised if a defendant conducts activities within the forum state thereby invoking the benefits and protections of the forum's laws). Since neither Roush nor Wood purposefully availed itself of Illinois, subjecting them to personal jurisdiction in Illinois is improper.

Griffith argues that Defendants' involvement in racing constitutes delivering a product into the stream of commerce in Illinois. Griffith also contends that Defendants' activities in other states have caused him to suffer economic injury within the state of Illinois. However, Defendants did not deliver any product into the stream of commerce in Illinois. Their participation in the NASCAR racing circuit does not elevate them to the status of injecting a product into Illinois to the level that either party could anticipate litigating in Illinois. *See Dehmlow*, 963 F.2d at 947 (recognizing that "a defendant must have 'an intent or purpose to serve the market in the forum State'")(quoting *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987)). Neither Roush nor Wood had any products that it marketed in Illinois, and it therefore follows that it was not their merchandise that caused injury to Griffith. Finally, Griffith argues that the sale of products via stores and television along with advertising can subject a defendant to personal jurisdiction is misplaced. However, Griffith does not claim that Roush or Wood ever sold or

advertised anything within Illinois. In addition, Griffith's reliance on *World-Wide Volkswagen* is misplaced because in that case the Court made it clear it was not unreasonable to hale the defendant into a state court because the defective product delivered into the stream of commerce injured the plaintiff in that state. 444 U.S. at 297. However, in the instant action, even if we were to somehow deem racing a product, it was not a defect in that product when it was delivered in Illinois that allegedly injured Griffith.

### 2. General Jurisdiction

If a defendant's contacts "with the forum state are unrelated to the subject matter of the lawsuit, general personal jurisdiction may be established if the defendant's contacts are so continuous and systematic that the defendant could reasonably foresee being haled into court in that state for any matter." *International Medical Group, Inc. v. American Arbitration Ass'n, Inc*, 312 F.3d 833, 846 7th Cir. 2002). *RAR*, 107 F.3d at 1277. The criteria for "general jurisdiction is 'considerably more stringent' than that required for specific jurisdiction." *Purdue Research Foundation*, 338 F.3d at 787. The defendant's contacts with the forum state "must be so extensive to be tantamount to [the defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an [Illinois] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Id.*

In the instant action neither Roush nor Wood has any continuous or systematic general business contacts with Illinois. The single contract entered by Wood with an Illinois citizen is insufficient to satisfy the demanding standard required to establish general jurisdiction. Neither did the Defendants compete at races in Illinois in a continuous or systematic manner. As indicated above, Defendants' participation at races in Illinois marked only a few of the numerous races entered each year, and each Defendant received only a fraction of their annual revenues from Illinois races. Therefore, Defendants' motions to dismiss for lack of personal jurisdiction are granted. We deny Defendants' motions to transfer in the alternative as moot.

## CONCLUSION

Based on the foregoing analysis, we grant Roush's motion to dismiss and grant Wood's motion to dismiss and deny the motions to transfer in the alternative as moot.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 26, 2004